# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

OLAJUWON ONIK CARTER,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 326442
Wayne Circuit Court
LC No. 14-007691-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

IRELL DWAYNE FRIDAY,

        Defendant-Appellant.

No. 326467
Wayne Circuit Court
LC No. 14-007691-01-FC

---

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

Defendants, Olajuwon Onik Carter and Irell Dwayne Friday, were tried jointly before one jury. The jury convicted Carter and Friday of carjacking, MCL 750.529a, armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced Carter to 20 to 30 years in prison for the carjacking and armed robbery convictions, and 12 to 20 years in prison for the home invasion conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. The trial court sentenced Friday to 18 to 30 years in prison for the carjacking and armed robbery convictions, and 12 to 20 years in prison for the home invasion conviction, those sentences to also be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. Carter appeals as of right in Docket No. 326442, and Friday appeals as of right in Docket No. 326467. We affirm defendants' convictions, but remand to vacate in part the October 16, 2015 order denying Carter's motion for a new trial and resentencing in Docket No. 326442, and remand for further proceedings consistent with this opinion in Docket No. 326467.

-1-

# I. FACTUAL BACKGROUND

Defendants' convictions arise from an August 14, 2014 attempted carjacking, armed robbery, and home invasion at the home of Danny and Olie Kauthar in Detroit, Michigan. That afternoon, Danny entered his 2013 Ford Flex in order to go to the store. Before Danny could back out of the driveway, a white or cream-colored car pulled in behind the Flex, blocking Danny from leaving. A man, whom Danny later identified as defendant Friday, approached the driver's side of the Flex carrying a gun. Another man, who was also carrying a gun, approached the passenger's side of the vehicle. He pointed the gun at the Flex and made an "up and down motion," as if he was indicating that Danny should get out. Danny exited the car, and Friday instructed Danny to hand over his keys. Danny ultimately cooperated, and Friday removed $340 from Danny's pocket after taking the keys. Friday then entered the car and attempted to start the vehicle, even though the car was already started. After fumbling with the controller, Friday exited the vehicle and moved toward the house, demanding to know which of Danny's keys opened the side door. Friday then broke a window with the handle of his gun in order to enter the house, where Olie and the couple's great-grandsons were located. Olie testified that Friday entered the house, pointed a gun at her, and instructed her to lie on the ground.

Meanwhile, Danny was still standing at the car when an unidentified perpetrator pointed a gun at his back and ordered him into the house. Ignoring this command, Danny ran toward the third perpetrator, who was standing near the driver's side door of the perpetrators' car, pointing a gun at Danny. At trial, Danny identified the third perpetrator as defendant Carter. As he ran, Danny yelled for help, intending to attract the attention of his neighbors across the street, who were talking on their porch. Friday exited the home, and the three men entered their car and drove away.

Soon after arriving at the scene, the police discovered Friday's cell phone in the Kauthars' yard. Danny watched as a police officer looked through the pictures on the phone, and he spontaneously identified Carter and Friday as the perpetrators in some of the pictures.

## II. DOCKET NO. 326442 (DEFENDANT CARTER)

## A. INEFFECTIVE ASSISTANCE (CELL PHONE TOWER TRACKING)

Carter first argues that defense counsel was ineffective for failing to investigate and present evidence of cell phone tower tracking data for his phone at the time of the crimes to support his alibi defense that he was at the apartment that he shared with his sister, Shaylon Friday, when the offenses occurred. We disagree.

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

The trial court considered and rejected this claim after conducting a *Ginther*[1] hearing. "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's

---

[1] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). See also *People v Dendel*, 481 Mich 114, 124, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). We must give deference to the trial court's factual findings, especially when they are related to its credibility determinations. MCR 2.613(C); *Dendel*, 481 Mich at 130; *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [*People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014) (quotation marks and citations omitted).]

"A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

"This Court will neither substitute[] its judgment for that of counsel regarding matters of trial strategy, nor make[] an assessment of counsel's competence with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013) (quotation marks and citation omitted; alterations in original). However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

2. ANALYSIS

"A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses," meaning those "that might make a difference in the outcome of the trial." *In re Ayres,* 239 Mich App 8, 22; 608 NW2d 132 (1999). Accordingly, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted). However, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

Even if we assume, without deciding, that defense counsel was asked to investigate cell phone tower tracking records for Carter's phone at the time of the offenses, and that counsel's failure to investigate fell below an objective standard of reasonableness, Carter has failed to establish that he was prejudiced by counsel's alleged deficiency because he has not demonstrated a reasonable probability that the result of the proceeding would have been different had the cell phone records been presented at trial.

One of the victims, Danny Kauthar, identified Carter as the third perpetrator, who was standing by the getaway car with a gun as Danny fled. In addition, Danny's great-grandson, DR,

testified at trial that he saw both Friday and Carter at the crime scene. Carter attempts to undercut the identification testimony, noting that Danny misidentified Friday at a lineup, emphasizing that DR provided inconsistent testimony regarding defendants' roles at the crime scene, and arguing that he was deemed guilty merely based on his association with Friday in pictures found on Friday's cell phone. However, these potential issues related to the identification testimony were already presented and rejected by the jury. Accordingly, we find it unlikely that the phone records would have affected the outcome.

Specifically, Carter pursued an alibi defense at trial, through which he claimed that he was at the apartment during the crimes. He relied on Shaylon to testify to his whereabouts, but her credibility was called into question. At trial, she testified that Carter was with her from 1:00 to 10:00 p.m. At the *Ginther* hearing, however, she claimed that she was in and out of the apartment during that afternoon because she "had left to go find [herself] something to wear." In addition, at trial and at the *Ginther* hearing, Shaylon testified that, on August 14, she was caring for her son and Carter's only child and had asked him to babysit both children, but Carter's mother testified that she cared for Carter's daughter "all day" on August 14.

Most importantly, the phone records do not make Shaylon's testimony more believable. The parties' experts both agree that, based on the data showing the use of the Joy Road tower, Carter's phone could not have been at the crime scene when it was used on August 14 at 3:47 p.m. and from 7:32 to 8:01 p.m. Although the phone never connected to a tower near the crime scene, it was unused from 1:01 to 2:01 p.m., from 4:34 to 7:15 p.m., and from 8:01 to 9:59 p.m.[2] There is no evidence that establishes more probably than not that the crimes occurred when the phone connected to the Joy Road tower as opposed to when the location of the phone was unknown. The reporting officer testified that, based on Danny's statement to her, she wrote in her report that the crimes occurred at 8:00 p.m. But at the preliminary examination, Danny testified that the crimes occurred at 5:00 p.m. At trial, he thought the crimes occurred around 2:30 or 3:30 p.m. The neighbor who called 9-1-1 thought the crimes occurred between 4:00 and 6:00 p.m. Police activity logs show that the police arrived between 8:15 and 8:30 p.m., but both Danny and the 9-1-1 caller testified that there was a delay between the 9-1-1 call and the police response. Even in light of the fact that the last activity on Friday's phone, which was left at the scene, occurred at 7:45 p.m., the gaps in activity on Carter's phone make it very plausible that the carjacking occurred while the cell phone could not be tracked, whether because it was at a separate location when the crime occurred or because Carter simply did not use his cell phone during the incident.

Even if the crimes occurred when the phone was connecting to the Joy Road tower, the records do not prove that it was Carter, as opposed to someone else, using the phone. Although Carter's family testified that he always had it in his possession, the phone was registered to Carter's mother, and nothing prevented Carter or his mother from lending it to someone else during the time at which Carter committed the crimes.

---

[2] When Carter used the phone at 2:01, 2:08, and 3:47 p.m., he was in contact with Friday. A jury could infer that they were planning or rehashing the crimes at those times.

In sum, Carter cannot establish that the outcome of the trial would have been different but for defense counsel's failure to investigate and present the cell phone tracking records. Carter was not denied the effective assistance of counsel on this basis.

## B. IDENTIFICATIONS

Carter next argues that Danny's and DR's in-court identifications of him should not have been allowed at trial because Danny's identification was tainted by a previous photographic identification procedure that was unduly suggestive, and DR's identification of Carter was suggestive and unreliable because Carter was sitting in the courtroom at the defense table when DR first saw him. We disagree.

### 1. STANDARD OF REVIEW

Because Carter failed to object to the in-court identifications, to move to suppress the identification evidence, or to request a *Wade*[3] hearing, these claims are unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007); *People v Daniels*, 163 Mich App 703, 710-711; 415 NW2d 282 (1987); *People v Davis*, 146 Mich App 537, 547; 381 NW2d 759 (1985), and reviewed for plain error affecting his substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

### 2. DANNY

Carter argues that Danny's in-court identification of him was tainted by Danny's prior identification of him in pictures on Friday's phone at the crime scene. We disagree.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). Likewise, "[a] photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification. . . . Moreover, when the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (quotation marks and citations omitted). However, in contexts analogous to this case, a prompt on-the-scene identification is reasonable and permissible because it allows " 'the police to immediately decide

---

[3] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

whether there is a reasonable likelihood that the suspect is connected with the crime, and subject to arrest, or merely an unfortunate victim of circumstance.' " *People v Libbett*, 251 Mich App 353, 361; 650 NW2d 407 (2002), quoting *People v Winters*, 225 Mich App 718, 728; 571 NW2d 764 (1997). On-scene identification also allows victims to make identifications when their memories are fresh. *Libbett*, 251 Mich App at 362. See also *Winters*, 225 Mich App at 726-728.

To challenge an identification on due process grounds, a defendant must establish " 'that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification.' " *Williams*, 244 Mich App at 542, quoting *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). "If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established 'that is untainted by the suggestive pretrial procedure.' " *Williams*, 244 Mich App at 542-543, quoting *Kurylczyk*, 443 Mich at 303.

We find *Perry v New Hampshire*, 565 US 228; 132 S Ct 716; 181 L Ed 2d 694 (2012), particularly instructive here. In that case, an eyewitness saw a man break into a car and called the police. *Id*. at 233. An officer responded and detained a man in the parking lot, who had been holding two car-stereo amplifiers in his hands. *Id*. A metal bat was on the ground behind him. *Id*. The responding officer left the man in the parking lot with another officer and went inside to interview the eyewitness. *Id*. at 234. When the responding officer asked the eyewitness for a more specific description of the perpetrator, the eyewitness pointed to her window and said the perpetrator was standing in the parking lot, next to the police officer. *Id*. at 234. That man was then arrested and convicted in state court. On appeal to the United States Supreme Court, he argued that the highly suggestive nature of the identification procedure entitled him to a suppression hearing prior to trial in order to determine the admissibility of the identification. *Id*. at 236. The Court rejected this argument, ruling that due process only requires a hearing when law enforcement arranged the unnecessarily suggestive circumstances under which the identification was obtained. See *id*. at 242. Accordingly,

> [w]hen no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt. [*Id*. at 233.]

Stated differently, "[t]he fallibility of eyewitness evidence does not, *without the taint of improper state conduct*, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness," *id*. at 245 (emphasis added), and "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of

an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Id*. at 248.[4]

Considering the totality of the circumstances, Danny's on-scene identifications of defendants on the recovered cell phone were not based on an impermissibly suggestive procedure leading to a substantial likelihood of misidentification. The police did not know what was on the phone when it was found and did not ask Danny to look at it to see if the perpetrators were pictured. Rather, the officer found the phone in the grass, and Danny asked if they could look at pictures saved on the phone. As the officer perused the pictures, Danny watched and spontaneously identified the three perpetrators. Although the facts of this case are distinguishable from the facts in *Perry*, *Hampton*, and *Metcalf*,[5] they share a common thread: the fact that the identifications were not planned or prearranged by the police. See *Perry*, 565 US at 233. Moreover, the identifications here ultimately provided an immediate lead for the police and allowed Danny to make the identifications while his memory was fresh. See *Libbett*, 251 Mich App at 362-363.

Because Danny's on-scene identifications of Carter on the recovered cell phone did not involve an impermissibly suggestive procedure, orchestrated by the police, that led to a substantial likelihood of misidentification, there was no plain error in allowing Danny's subsequent in-court identification. See *Carines*, 460 Mich at 763-764.

3. DR

Carter argues that DR's in-court identification of him was unduly suggestive because it amounted to a one-man showup. We disagree.

Although an identification at a prior court proceeding may be so suggestive as to require suppression of identification testimony under the circumstances, see *People v Solomon*, 47 Mich App 208, 216-221; 209 NW2d 257 (1973) (LESINSKI, C.J., dissenting), rev'd for the reasons stated in dissent 391 Mich 767 (1974), it does not follow that all in-court identifications are

---

[4] Similarly, in *People v Hampton*, 52 Mich App 71, 76-77; 216 NW2d 441 (1974), rev'd on other grounds 394 Mich 437 (1975), two witnesses were standing with the prosecutor when the defendant walked toward the courtroom. "One witness spontaneously identified [the] defendant to the prosecutor." *Id*. at 77. "The other witness did not identify [the] defendant at that time, nor was she able subsequently to identify [the] defendant in court." *Id*. This Court ruled that the identification "was mere happenstance," as opposed to a "police-induced, arranged confrontation[]," and, therefore, did not fall "within *Wade*'s ambit." *Id*. Likewise, in *People v Metcalf*, 65 Mich App 37, 50; 236 NW2d 573 (1975), this Court again found that happenstance confrontations do not amount to due process violations. The witness in *Metcalf* happened to observe and spontaneously identify the defendant when the witness was at the district court to sign the complaint. *Id*. at 41. This Court held that the trial court properly denied a motion to quash the in-court identification on the basis of the earlier observation. *Id*. at 50.

[5] See footnote 4.

*impermissibly* suggestive, see *People v Manuel Johnson,* 58 Mich App 347, 353; 227 NW2d 337 (1975). Notably, "[s]imply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). This Court has rejected the position that an in-court identification is, on its own, "inherently suggestive since the witness knows that the defendant is the person charged with the offense and is the person the witness is asked to identify." *People v Michael Fuqua*, 146 Mich App 133, 143; 379 NW2d 396 (1985), overruled in part on other grounds by *People v Heflin,* 434 Mich 482, 498; 456 NW2d 10 (1990). "There is no per se rule that, when the initial confrontation occurs at trial, such situation is inherently suggestive." *Id*. Rather, there must be other factors that contribute to the possibility of misidentification. *Id*. 143-144. See also, e.g., *Colon*, 233 Mich App at 305. Here, defendant has not identified any additional factors that would render the in-court identification unduly suggestive.

Moreover, in order to impeach DR's identification at trial, defense counsel raised the fact that DR did not identify Carter previously and later confused defendants' roles. On this record, Carter cannot establish a plain error affecting his substantial rights related to DR's in-court identification. See *Carines*, 460 Mich at 763-764.

### C.  INEFFECTIVE ASSISTANCE OF COUNSEL

Carter also argues that defense counsel was ineffective for failing to request a *Wade* hearing, failing to file a motion to suppress Danny's and DR's in-court identifications, and otherwise failing to object to the admission of their identifications. As previously explained, Carter has not established a plain error regarding these identifications. Accordingly, any objection or motion to suppress on this basis would have been futile. Defense counsel is not ineffective for failing to make a futile motion. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

### D.  OFFENSE VARIABLE ("OV") 8

Carter argues that he is entitled to resentencing because the trial court improperly assessed 15 points for OV 8. He notes that the trial court agreed at a post-sentencing hearing that zero points should have been assessed for OV 8. We conclude that OV 8 was properly scored at 15 points and, therefore, resentencing is not required.

### 1.  STANDARD OF REVIEW

In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), the Michigan Supreme Court clarified both the quantum of evidence necessary to support a scoring decision and the standard of review to be used by this Court in reviewing sentencing guideline challenges:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.

### 2.  ANALYSIS

MCL 777.38(1)(a) provides that 15 points should be scored for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." In *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003), this Court addressed asportation, stating:

> The term "asportation" is not defined in the sentencing guidelines statute. However, in order to establish asportation as an element of the crime of kidnapping, MCL 750.349, there must be some movement of the victim taken in furtherance of the kidnapping that is not merely incidental to the commission of another underlying lesser or coequal crime. While asportation is an element of forcible kidnapping, there is no requirement that the movement itself be forcible. Rather, the only requirement for establishing asportation is that the movement not be incidental to committing an underlying offense. [Citations omitted.]

Here, the sentencing offense was carjacking. After the three perpetrators arrived, the unidentified perpetrator on the passenger's side with a gun signaled for Danny to exit his car. Danny's exit was no doubt to a place of greater danger, outside the protection of his vehicle and closer to the armed perpetrators. But that movement does not amount to asportation under MCL 777.38 because it was incidental to the commission of the carjacking. Accordingly, because the record demonstrates that Danny was not forced to move to another place before he escaped, there is no evidence of asportation unrelated to the carjacking.

Importantly, however, MCL 777.38 also allows for a score of 15 points if a victim was held captive beyond the time necessary to commit the offense. MCL 750.529a provides, in relevant part:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

In this case, (1) the perpetrators used the threat of force to induce Danny to exit the vehicle, (2) Friday demanded the keys, and (3) Friday then entered the vehicle and unsuccessfully tried to start it. From this evidence, a jury could infer that the perpetrators were attempting to commit a larceny of a motor vehicle. See *id*. Therefore, at that point, the underlying offense of carjacking was complete. But the perpetrators nevertheless continued to hold Danny captive. Friday pointed a gun at Danny and demanded to know which key opened the side door to his house. While Friday entered the house, the unidentified perpetrator stood behind Danny, pointed a gun to his back, and told him to go up the stairs and follow Friday into the house. It was only then that Danny escaped. Therefore, because Danny was held captive

-9-

beyond the time necessary to commit the carjacking, the trial court did not err in assessing 15 points for OV 8. See MCL 777.38(1)(a).

Carter argued at the motion for resentencing, and he maintains on appeal, that Danny could not have been held longer than the time necessary to commit the carjacking because the offense was never completed. He claimed that MCL 777.38 does not contemplate mere attempts. But again, the offense of carjacking is complete when a defendant attempts to commit a larceny of a motor vehicle. Thus, the trial court erred when it agreed at the post-conviction motion hearing that it should not have assessed 15 points for OV 8.

Accordingly, we vacate the portion of the October 16, 2015 order providing that "OV 8 is scored at 0 points." Absent any error in the scoring of OV 8, resentencing is not required.

## E. RESTITUTION

Lastly, Carter argues that the trial court's order requiring him to pay Danny $300 in restitution violates his Sixth Amendment right to a jury trial because he did not admit, nor did the jury determine, the amount of restitution that was owed. We disagree.

### 1. STANDARD OF REVIEW

Because Carter did not raise this Sixth Amendment issue at sentencing, the issue is unpreserved, and review is limited to plain error affecting his substantial rights. *People v Lockridge*, 498 Mich 358, 392-393; 870 NW2d 502 (2015).

### 2. ANALYSIS

As defendant recognizes, this Court rejected this same argument in *People v Corbin*, 312 Mich App 352, 371-373; 880 NW2d 2 (2015). In that case, this Court held that judicial fact-finding to determine the appropriate amount of restitution does not implicate a defendant's Sixth Amendment right to a jury trial. *Id.* at 372-373. We are bound by that decision. MCR 7.215(J)(1). And, consistent with this Court's explanation in *Corbin*, Carter's reliance on *Southern Union Co v United States*, ___ US ___; 132 S Ct 2344; 183 L Ed 2d 318 (2012), is misplaced. In that case, the United States Supreme Court held that the determination of any fact, except the existence of a prior conviction, which increases a defendant's maximum potential sentence, including a sentence consisting of a criminal fine, must be determined by a jury. *Southern Union*, 567 US at ___; 132 S Ct at 2348-2349, 2357. As this Court observed in *Corbin*, "[a] criminal fine and restitution are not synonymous . . . ." *Corbin*, 312 Mich App at 372. Accordingly, Carter's argument fails.

## III. DOCKET NO. 326467 (DEFENDANT FRIDAY)

### A. IDENTIFICATIONS

Like Carter, Friday argues that Danny's identification of him in the pictures on Friday's phone at the crime scene violated his due process rights and that the in-court identifications at trial were unduly suggestive. We again disagree.

## 1. STANDARD OF REVIEW

Friday's failure to object to the identifications leaves this issue unpreserved, *Metamora Water Serv, Inc*, 276 Mich App at 382; *Daniels*, 163 Mich App at 710-711; *Davis*, 146 Mich App at 547, and limits our review to plain error affecting Friday's substantial rights, *Carines*, 460 Mich at 763-764.

## 2. ANALYSIS

For the reasons previously discussed, Danny's on-scene identifications of defendants in the pictures on the phone did not result from an impermissibly suggestive procedure arranged by the police. Likewise, for the same reasons previously discussed with regard to Carter, there is no indication here under the totality of the circumstances that the in-court identifications of Friday were unduly suggestive.

Additionally, to the extent that Friday also contends that an independent basis was required for Olie's and DR's identifications of him at trial apparently based on their pretrial identifications of him, it is noteworthy that an independent basis must be established only after a defendant shows that a pretrial procedure was impermissibly suggestive, *Williams*, 244 Mich App at 542-543, and Friday raises no claim regarding the procedures associated with Olie's and DR's pretrial identifications. Instead, he emphasizes their conflicting statements regarding defendants' identities. These claims regarding the witnesses' conflicting statements and testimony do not establish that their in-court identifications of him were unduly suggestive or improper. Rather, these inconsistencies were a matter of credibility for the jury to determine. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) ("The credibility of identification testimony is a question for the trier of fact that we do not resolve anew."). See also *Kansas v Ventris*, 556 US 586, 594; 129 S Ct 1841, 1847; 173 L Ed 2d 801 (2009) ("Our legal system, however, is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses . . . .").[6]

---

[6] Friday also briefly suggests that the in-court identifications were improper because "[c]learly the complainants discussed identification" in light of Danny's brief statement at the preliminary examination that Olie and DR were inside the house during the incident and would "be able to better tell" which perpetrator went inside. Contrary to defendant's characterization of Danny's statement, it does not indicate that the witnesses discussed their testimony. However, even if it did, witnesses are not precluded from discussing their testimony in the absence of a sequestration order, and, in fact, witnesses are not *automatically* precluded from discussing the case following the entry of a sequestration order. See *People v Davis*, 133 Mich App 707, 714; 350 NW2d 796 (1984) ("Where the trial court is not requested to caution the sequestered witnesses not to discuss the evidence, the sequestration order is not violated by such discussion, and therefore the court does not abuse its discretion in permitting the witnesses to testify."). And even if a sequestration order is in place, and it is violated by witnesses in a given case, the violation does not warrant relief unless the defendant can show that it prejudiced his or her trial. *People v King*, 215 Mich App 301, 309; 544 NW2d 765 (1996).

Accordingly, for all of these reasons, Friday has failed to establish a plain error concerning the witnesses' in-court identification of him at trial.

## B. GREAT WEIGHT OF THE EVIDENCE

Friday argues that his convictions are against the great weight of the evidence because the evidence admitted at trial showed that he was not one of the perpetrators. We disagree.

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

Because Friday did not preserve this issue by raising it in a motion for a new trial, it is reviewed for plain error affecting his substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). A new trial may be granted, on some or all of the issues, if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e).

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. [U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [*Musser*, 259 Mich App at 218-219 (quotation marks and citations omitted; alteration in original).]

See also *People v Lemmon*, 456 Mich 625, 642-647; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

### 2. ANALYSIS

Danny, Olie, and DR each recalled seeing Friday at the house when the crimes were committed and identified him as one of the three perpetrators. Although Friday points to inconsistencies in the eyewitnesses' descriptions and testimony, he does not argue that their testimony contradicted indisputable physical facts or defied physical realities, and he has not established that their testimony was so far impeached that it was deprived of all probative value. See *Musser*, 259 Mich App at 218-219. Apart from the eyewitnesses' identifications, the jury could also infer that Friday participated in the crimes based on the discovery of his cell phone in the grass on the victims' property immediately after the offenses, as this fact allowed the jury to infer that Friday dropped his phone while committing the crimes.

As Friday emphasizes, he and his sister offered testimony that a friend borrowed his phone, and he, his sister, and his grandmother maintained that he was caring for his grandmother on August 14. But Friday admitted to the female prosecutor at trial that he lies to "females all day everyday." Moreover, his sister was the only witness who claimed that Friday never left the house. Friday's grandmother was confined upstairs and did not know whether Friday left that

day, and even Friday admitted that he left on one occasion to go to the liquor store. We must defer to the jury's resolution of these factual questions. See *Musser*, 259 Mich App at 218-219.

Because the evidence does not preponderate heavily against the jury's verdict, Friday cannot establish plain error affecting his substantial rights. See *id*. at 218.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Friday raises several ineffective assistance of counsel claims. All of them lack merit.

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

Because Friday did not raise this issue in the trial court through a motion for a new trial or evidentiary hearing, and we denied his motion to remand,[7] our review of this issue is limited to mistakes apparent from the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

### 2. ANALYSIS

First, Friday argues that defense counsel was ineffective for failing to move to suppress Danny's in-court identification of him. As previously explained, the on-the-scene identification by Danny did not involve an impermissibly suggestive identification procedure. Therefore, any motion to suppress Danny's in-court identification on this basis would have been futile, and defense counsel is not ineffective for failing to make a futile motion. *Thomas*, 260 Mich App at 457.

Second, Friday argues that defense counsel was ineffective for failing to call three witnesses, Shaylon Friday, Meakia Boyd, and Jasmine Johnson, who he claims heard Terrance Taylor, Jr., confess to the crimes. Friday has failed to establish that he is entitled to relief because he has not established a factual predicate for this claim. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Citing the affidavit attached to his brief on appeal and motion to remand, Friday argues that he told defense counsel that he knew who committed the crime and that several witnesses heard that person confess to the crime.[8] While an affidavit was required to be filed with Friday's motion to remand, MCR 7.211(C)(1), "it is impermissible to expand the record on appeal," *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). See also *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009).

---

[7] *People v Friday*, unpublished order of the Court of Appeals, entered February 10, 2016 (Docket No. 326467).

[8] Friday's claims regarding Taylor's confession are also undermined by the fact that Friday and Shaylon both testified at trial but never mentioned the confession.

Nevertheless, even if we were to consider the affidavit, Friday's self-serving statements, without more, would not prove his innocence. Because there were three perpetrators, Taylor's confession would not exclude Friday as one of the other two perpetrators and thereby exonerate him. Again, three witnesses identified Friday as one of three perpetrators, and his phone was recovered from the scene. Accordingly, the affidavit is insufficient to establish the factual predicate for his claim that his defense counsel's performance fell below an objective standard of reasonableness, and Friday cannot establish the requisite prejudice. See *Carbin*, 463 Mich at 600; *Gaines*, 306 Mich App at 300.

## D. SENTENCING

## 1. ALLEGED SCORING ERRORS

Friday next contends that resentencing is required because the trial court's scoring of OVs 8, 10, and 13 was not supported by a preponderance of the evidence. See *Hardy*, 494 Mich 438. We disagree.

As previously discussed, MCL 777.38(1)(a) provides that 15 points should be scored for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." When Friday unsuccessfully attempted to start the vehicle, the carjacking was complete, but the perpetrators nevertheless continued to hold Danny captive at gunpoint. Therefore, the trial court did not err in scoring 15 points for OV 8 because Danny was held captive beyond the time necessary to commit the carjacking.

MCL 777.40(1)(b) provides that 10 points should be scored for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." Points should be assessed under OV 10 only when it is readily apparent that a victim was vulnerable, and the existence of a factor "does not automatically equate with victim vulnerability." MCL 777.40(2). See also *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008). The record demonstrates that Danny and Olie were great-grandparents caring for their great-grandsons when the crimes were committed, supporting a clear inference that Danny and Olie were advanced in years. Likewise, the PSIR indicates that Danny was 69 and Olie was 74 at the time of the offense. Moreover, according to the prosecutor's warrant recommendation in the lower court file, this case was flagged for the "elder abuse" unit. Notably, the perpetrators pulled in behind Danny and blocked his car immediately after he entered it in the driveway. Considered together, these facts strongly support an inference that the perpetrators targeted Danny based on his age and appearance. The trial court did not err in assessing 10 points for OV 10.

MCL 777.43(1)(c) provides that 25 points should be scored for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." Friday argues that the crimes were a one-time occurrence and did not amount to a "pattern" under the statute. However, in *People v Francisco*, 474 Mich 82, 86; 711 NW2d 44 (2006), the Michigan Supreme Court explained that a "pattern" is established merely by proving that three or more crimes were committed within a five-year period, specifically considering the sentencing offense. See also MCL 777.43(2)(a) ("For determining the appropriate points under this

-14-

variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction."). Accordingly, because Friday's offenses all occurred on August 14 and, therefore, within a five-year period, the trial court did not err in assessing 25 points for OV 13.

## 2. JUDICIAL FACT-FINDING

Friday also argues that this Court should remand for resentencing because the trial court scored OVs 1, 4, 8, and 10 based on facts that were not admitted by Friday or found by a jury beyond a reasonable doubt. As the prosecution concedes, we agree that Friday's constitutional rights were violated at sentencing and conclude that the appropriate remedy is a *Crosby*[9] remand, as outlined in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

### a. STANDARD OF REVIEW

Because Friday did not object to the trial court's scoring of the offense variables on Sixth Amendment grounds, these claims are unpreserved and reviewed for plain error affecting substantial rights. *Lockridge*, 498 Mich at 392-393.

### b. ANALYSIS

In *Lockridge*, 498 Mich at 364, the Michigan Supreme Court concluded that Michigan's sentencing guidelines were "constitutionally deficient" to the extent that "the guidelines *require[d]* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase[d] the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." To cure the constitutional violation, the Court "sever[ed] MCL 769.34(2) to the extent that it is mandatory and [struck] down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3)." *Id.* at 391-392. The Court concluded that a *Crosby* remand, so that the trial court may determine whether it "would have imposed a materially different sentence but for the constitutional error," is appropriate for "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure." *Id.* at 395-396. In "cases in which facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced[,] . . . an unconstitutional constraint actually impaired the defendant's Sixth Amendment right." *Id.* at 395.

Friday challenges the trial court's assessment of 15 points for OV 1, MCL 777.31(1)(c) ("[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an

---

[9] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

immediate battery when threatened with a knife or other cutting or stabbing weapon");[10] 10 points for OV 4, MCL 777.34(1)(a) ("[s]erious psychological injury requiring professional treatment occurred to a victim"); 15 points for OV 8, MCL 777.38(1)(a), as previously discussed; and 10 points for OV 10, MCL 777.40(1)(b), as also previously discussed. Even if there is record support for the findings required for each OV, none of Friday's convictions required the jury to make these findings, and Friday did not admit any of the requisite facts when he testified at trial. Without the 45 points attributable to the scoring of OVs 1, 4, 8, and 10, Friday's total OV score is reduced from 90 points to 45 points, and, in turn, his minimum range calculated under the sentencing guidelines is reduced from 135 to 225 months (under OV Level V) to 108 to 180 months (under OV Level III). See MCL 777.62. Thus, Friday's minimum sentence range was actually constrained by the Sixth Amendment violation. See *Lockridge*, 498 Mich at 395.

Accordingly, because the trial court did not impose an upward departure sentence in this case, Friday is entitled to a *Crosby* remand so that the trial court may determine whether it would have imposed a materially different sentence under the now-advisory sentencing guidelines. *Id*. On remand, the trial court shall follow the procedure described in Part VI of the Supreme Court's opinion in *Lockridge*, 498 Mich at 395-399.

## E. FRIDAY'S STANDARD 4 BRIEF

Friday raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

## 1. JOINDER

Friday first argues that the trial court lacked the authority to try Carter and Friday together under MCR 6.121. Friday's unpreserved claim is reviewed for plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

Friday's argument is inconsistent with MCR 6.121(A), which expressly permits joinder:

> (A) Permissive Joinder. An information or indictment may charge two or more defendants with the same offense. It may charge two or more defendants with two or more offenses when

> > (1) each defendant is charged with accountability for each offense, or

> > (2) the offenses are related as defined in MCR 6.120(B).

> When more than one offense is alleged, each offense must be stated in a separate count . . . .

---

[10] Friday concedes that the trial court could have assessed five points under OV 1 because "[a] weapon was displayed or implied." MCL 777.31(1)(d).

A prosecutor makes this charging decision when filing an information or indictment under MCR 6.112(C). In this case, the prosecutor charged Carter and Friday with accountability for the same four offenses. MCR 6.121(C)(1). Friday seems to attribute this charging decision to the trial court and consequently argue that it acted outside its authority, but Friday's argument is inconsistent with the record and criminal procedure. Friday cites a trial court's power under MCR 6.120(B) to join offenses charged in two or more informations or indictments after a defendant has been charged and, therefore, claims that a trial court lacks similar discretion under MCR 6.121 to join defendants in separate informations or indictments after they have been charged. But, again, Friday's argument is misguided here, as the prosecutor charged both defendants in the same felony information.

Friday has failed to establish that the trial court committed any plain error with respect to the joinder. See *Carines*, 460 Mich at 763-764.

## 2. SEVERANCE

Friday also argues that he and Carter should have been tried separately because they had irreconcilable defenses. "Failure to move for a separate trial precludes appellate review." *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). Nevertheless, even if we were to address this issue, we would conclude that Friday's and Carter's defenses were not so incompatible that they could not both be believed. See *People v Hana*, 447 Mich 325, 349-350; 524 NW2d 682 (1994). Friday and Carter both claimed that they were not present during the crimes. The fact that Carter's defense counsel distanced Carter's conduct from Friday's conduct when referencing the cell phone pictures, and that Carter's defense counsel's cross-examination reiterated the differences between Danny's confidence in his description of Friday and his lack of confidence in his description of Carter, did not make defendants' alibi defenses mutually exclusive. Accordingly, Friday has not established a plain error affecting his substantial rights based on the trial court's failure to sever the trials sua sponte. See *Carines*, 460 Mich at 763-764.

## 3. PROSECUTORIAL MISCONDUCT

Lastly, Friday contends that the prosecutor committed misconduct by failing to inform the jury of inconsistencies in Olie's and DR's testimony and by relying on evidence from those witnesses to obtain his convictions. We disagree. Defendant failed to preserve his claims of prosecutorial misconduct by "contemporaneously object[ing] and request[ing] a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Thus, we review defendant's unpreserved claims for plain error affecting substantial rights. *Id*. at 475-476, citing *Carines*, 460 Mich at 763.

A defendant's constitutional due process rights are violated when his conviction is "obtained through the knowing use of perjured testimony[.]" *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "[A] prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the

judgment of the jury." *Aceval*, 282 Mich App at 389 (quotation marks and citations omitted). However, reversal is not necessary when the prosecutor does not attempt to conceal contradictions in a witness's testimony, and defense counsel is afforded a sufficient opportunity to impeach the witness's credibility through the use of prior statements. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998).

The prosecutor was not required to disbelieve Olie's testimony about Friday's hair and clothing merely because DR's testimony contradicted her in some respects. See generally *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142, 146; 845 NW2d 731 (2014). In any event, it is clear from the record that the prosecutor did not attempt to conceal the contradictions in the witnesses' testimony that Friday identifies on appeal, and that defense counsel was afforded an extensive opportunity to impeach the witnesses' credibility. See *Parker*, 230 Mich App at 690. The lineup photographs were also admitted into evidence, thereby giving the jury an opportunity to compare the pictures with the witnesses' descriptions of Friday in the lineup. Accordingly, to the extent that the witnesses' testimony included inconsistencies, the prosecutor and defense counsel equipped the jury to evaluate it, in full, and perform its role as the trier of fact. See *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007) ("A prosecutor's good-faith effort to admit evidence does not constitute misconduct."). Friday has not established a plain error affecting his substantial rights. See *Bennett*, 290 Mich App at 475-476.

## IV. CONCLUSION

We affirm defendants' convictions in both cases. In Docket No. 326442, we also affirm Carter's sentences, but we vacate the portion of the October 16, 2015 order stating that OV 8 should be scored at zero points. In Docket No. 326467, we remand for a *Crosby* procedure with respect to Friday's sentences. We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto